560 A.2d 501 (1989)
DISTRICT OF COLUMBIA METROPOLITAN POLICE DEPARTMENT, Appellant,
v.
Van E. BROADUS, Jr., Appellee.
Nos. 86-981, 86-1174.
District of Columbia Court of Appeals.
Argued January 20, 1988.
Decided June 9, 1989.
Edward E. Schwab, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Acting Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy *502 Corp. Counsel, Washington, D.C., were on the brief for appellant.
David E. Schreiber, Washington, D.C., for appellee.
Before NEWMAN and BELSON, Associate Judges, and PRYOR[*], Senior Judge.
NEWMAN, Associate Judge:
The question presented is whether the criminal indictment for offenses committed by an off-duty police officer with his service revolver constitutes "cause" for suspension without pay from the police force under D.C.Code § 1-617.1(d)(16) (1981). The Metropolitan Police Department (MPD) contends that the trial court's affirmance of the decision of the District of Columbia Office of Employee Appeals (OEA) reversing Broadus' suspension without pay and award of back pay was improper; that the filing of a felony indictment of assault with intent to kill while armed constituted sufficient cause to suspend Officer Broadus. We agree and reverse.

I.
On May 22, 1981, Van E. Broadus, an eight-year veteran of the MPD completed his rounds at 11:00 p.m. After work, Broadus met with friends for some drinks. He consumed three beers and ten whiskey and ginger ales before driving home, where he encountered several men standing around a Toyota automobile. He approached the group and laid his holstered service revolver on the hood of the car. The group conversed for twenty to thirty minutes and then an argument began. Broadus withdrew his gun and fired it three times: the bullets hit no one, but did damage the windshield of the Toyota.[1]
On October 14, 1981, the grand jury returned a two-count indictment charging Broadus with assault with intent to kill while armed, and malicious destruction of property. On October 30, 1981, the MPD placed Broadus in non-duty pay status, and served Broadus with notice of its intent to suspend him indefinitely without pay pending the outcome of the criminal proceedings.[2] The suspension without pay became effective on November 29, 1981, and Broadus was dismissed from the police department after a hearing in March 1984.[3]
Broadus appealed his suspension without pay to the OEA. See Employee v. Agency, 32 D.C. Reg. 2353 (April 26, 1985). The OEA invited the MPD to present evidence beyond the indictment to substantiate its decision that Broadus' behavior discredited the police department and thus constituted "cause" under D.C.Code § 1-617.1(d)(16) for the suspension without pay. The MPD declined to produce such additional evidence and again alleged only the fact of Broadus' indictment as sufficient proof to establish cause. The OEA, through both the Hearing Examiner and the Board, found the indictment to be insufficient evidence to support the MPD's finding of *503 cause as defined in Section 1-617.1(d)(16) to suspend Broadus without pay. See Employee, supra, 32 D.C.Reg. at 2355. It reversed the suspension and ordered back pay even though Broadus had already been convicted.
In reaching its findings, the OEA accepted the interpretation of section 1.617.1(d)(16) urged by Broadus, that the grounds for sustaining a finding of cause be found and proven by something beyond an indictment prior to the time that the adverse action is taken. The OEA found that the MPD failed to meet its burden of proof of establishing cause, since it had alleged only the fact of the indictment and nothing else. The OEA relied on its prior decision in Employee v. Agency, 31 D.C. Reg. 5381 (Oct. 26, 1984), decided while Broadus' action was pending.
In its prior decision, 31 D.C.Reg. 5381, the OEA also addressed a situation where police officers were indicted on criminal charges. The MPD declined to present additional evidence of misconduct and relied solely on the indictment to sustain the suspension without pay. The OEA rejected the use of the indictment as sufficient to prove cause and characterized the indictment as nothing more than a "formal recitation of criminal charges against a defendant, not proof of the charges contained in the indictment." 31 D.C.Reg. at 5384. In reliance on Employee, the OEA in the instant case concluded that "in order for an agency to establish cause under D.C.Code § 1-617.1(d)(16), it must ultimately show that the employee failed to maintain good behavior by some provable misconduct." Employee, supra, 32 D.C.Reg. at 2355.
The OEA explicitly rejected the MPD's argument that the decision of Brown v. Department of Justice, 230 U.S. App.D.C. 188, 715 F.2d 662 (D.C.Cir.1983), controlled the disposition of this case. Employee, supra, 32 D.C.Reg. at 2355. In Brown, the District of Columbia Circuit Court was presented with a factually similar situation as that presented here.[4] The decision to suspend, as pointed out in Brown, "was based entirely on the indictment itself; the agency undertook no independent investigation and presented no evidence of wrong-doing by petitioners other than the indictment." Brown, supra, 715 F.2d at 664. The D.C. Circuit affirmed the agency's decision and held that evidence of an indictment constituted reasonable cause to suspend an employee for a work-related incident. Id. at 667.
In the instant case, the trial court deferred to the OEA's construction of the Comprehensive Merit Personnel Act of 1978 (CMPA) and its rejection of Brown, and emphasized that since the court in Brown construed a federal statute as it was applied to federal employees, Brown was not controlling. The court acknowledged that it found the policy considerations enunciated in Brown "persuasive," but affirmed the decision of the OEA as one in line with applicable law, and ordered the District to pay Broadus' attorney's fees and costs.

II.
The Comprehensive Merit Personnel Act of 1978 represents a massive undertaking by the District of Columbia Council to fulfill its mandate under section 1-242(3) of the District of Columbia Self-Government and Governmental Reorganization Act to consider and adopt a comprehensive merit system of personnel management for the employees of the District of Columbia by *504 1980. See D.C.Code §§ 1-601.1-1-637.2 (1981). In developing this legislation, the Council hoped to create a "modern, flexible, comprehensive city-wide system of public personnel administration." Report of the Committee on Government Relations, Council of the District of Columbia, on Bill No. 2-10, D.C. Law 2-139, at 39 (Committee Report). Title XVII of the Act establishes the procedures for grievances and adverse actions; section 1-617.1(d)(16) thereunder rests at the core of the current dispute.
The CMPA defines a suspension of more than thirty days as an "adverse action" and provides that adverse actions may be pursued only for "cause." D.C.Code § 1-617.1(b) (1981). Here, this provision was triggered when the MPD gave notice of its intent to suspend Broadus indefinitely without pay. See supra, note 2. "Cause" sufficient to support an adverse action is defined in section 1-617.1(d)(1)-(21), which sets forth the twenty-one grounds that constitute cause to support an adverse action. Relevant to this case is subsection 16 which states that cause may be found for:
Other failure of good behavior during duty hours which is of such a nature that it causes discredit to his or her agency or his or her employment. Notwithstanding the foregoing, the provisions of this paragraph shall be applicable to uniformed members of the Metropolitan Police Department during both on-duty and off-duty hours.
D.C.Code § 1-617.1(d)(16) (1981).
In determining the propriety of the OEA ruling that a criminal indictment cannot constitute cause for suspension without pay from the MPD under D.C.Code § 1-617.1(d)(16), we review the OEA decision as if the appeal had been heard by this court initially. Stokes v. District of Columbia, 502 A.2d 1006, 1010 (D.C.1985); Kegley v. District of Columbia, 440 A.2d 1013, 1018-19 (D.C.1982). "[W]e must examine the administrative record to determine whether there has been procedural error, whether there is substantial evidence in the record to support the OEA's findings, or whether the OEA's action was in some manner otherwise arbitrary, capricious, or an abuse of discretion." Stokes, supra, 502 A.2d at 1010 (footnote and citations omitted); D.C.Code § 1-1510 (1981). Agency findings of fact must be affirmed if "supported by and in accordance with reliable, probative and substantive evidence" in the record as a whole. Jones v. Police and Firemen's Retirement and Relief Board, 375 A.2d 1, 5 (D.C.1977). Where as here, however, the agency's decision rests on a question of law, i.e., whether a criminal indictment supplies a sufficient evidentiary basis to support cause for suspension without pay under D.C.Code § 1-617.1(d)(16), "the reviewing court has the greater expertise, and the agency decision is therefore accorded less deference." Saah v. District of Columbia Board of Zoning Adjustment, 433 A.2d 1114, 1116 (D.C.1981). We examine the record accordingly.

III.
The issue presented by this appeal is whether the fact of an indictment, as distinct from the acts alleged within it, constitutes sufficient evidence to establish cause under D.C.Code § 1-617.1(d)(16) to support an adverse action by the police department against one of its officers. The police department argues that the OEA decision infuses an evidentiary requirement into section 1-617.1(d)(16) that is not contemplated by the statute's language or its legislative history. Further, the MPD argues that the OEA decision reflects a profound misunderstanding of a criminal indictment. We agree with both assertions.
An indictment is the charging instrument issued by a grand jury. See Super.Ct. Crim.R. 6(f), 7(a); D.C.Code § 23-301 (1981). The grand jury serves to protect citizens against unfounded criminal prosecutions, see Scutchings v. United States, 509 A.2d 634, 636 (D.C.1986), and may issue an indictment only where there is "probable cause to believe a crime has been committed" by the defendant. Miles v. United States, 483 A.2d 649, 653 (D.C. 1984) (quoting United States v. Calandra, *505 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974)). The indictment must "be a plain, concise and definite written statement of the essential facts constituting the offense charged." Super.Ct.Crim. R. 7(c); see also Smith v. United States, 466 A.2d 429, 431-32 (D.C.1983). Thus, an indictment will not issue on abstract charges. See Brown, supra, 715 F.2d at 666.
The OEA mischaracterized the nature of an indictment in its decision in Employee, supra, 31 D.C.Reg. at 5381, the reasoning of which it adopted in the instant case. The OEA begins with the proposition that an indictment is nothing more than a formal recitation of criminal charges against a defendant and not proof of the charges alleged within. From this, the OEA concludes that "the indictment is not evidence of any conduct on the part of the employee, since the indictment is not his act, but an act of the state. Therefore, ... an indictment alone could not be construed as cause under D.C.Code § 1-617.1(d)[(16)]." Id. at 5384 (emphasis added). The relevant question, however, is whether the fact of the indictment itself, even if characterized as an act of the state, provides a sufficient evidentiary basis to support an adverse action against an employee. By asking the wrong question, the OEA obtained the wrong answer.
In Brown v. Department of Justice, the case explicitly rejected by the OEA, the D.C. Circuit affirmed the agency's use of the fact of the indictment alone to sustain a finding of cause for the indefinite suspension of two U.S. Border Patrol agents. Supra, 715 F.2d at 667. The court specifically rejected the argument that reasonable cause to suspend an employee can arise only from evidence of an employee's wrongful acts. Id. Rather, the court opined, we think correctly, that:
Certainly, at some point along the continuum of an employee's involvement in the criminal justice system, evidence of that involvement alone gives rise to reasonable cause to believe the employee has committed a crime.
Id. at 667. At one end of the continuum, conviction of a crime would most certainly constitute cause for suspension for a failure of good behavior, even where the agency lacked any actual evidence of the alleged criminal acts. See id. Indeed, section 1-617.1(d)(10) of the CMPA so provides.[5]See also District of Columbia Department of Corrections v. Teamsters Union Local No. 246, 554 A.2d 319, 324 (D.C. 1989). At the other end of the continuum, mere questioning or investigation by police officers into the alleged criminal acts of an employee would seem to constitute insufficient evidence "of a failure of good behavior" to support a suspension. Within these extremes, however, the court in Brown found that because of the strictures placed on the issuance of an indictment, particularly the fact that an indictment must be based on probable cause, that "[o]nce an employee is indicted on job-related charges, an agency has the "reasonable cause" necessary to justify suspending an employee." Id. (citing United States v. Calandra, 414 U.S. 338, 343-44, 94 S.Ct. 613, 617-18, 38 L.Ed.2d 561 (1974)). See generally Otherson v. Department of Justice, 234 U.S. App.D.C. 279, 280, 728 F.2d 1513, 1514 (1984) (affirming decision in Brown that "neither the Due Process Clause nor any relevant statute prohibits a temporary suspension without pay of a Border Patrol agent though predicated solely on a criminal indictment for job-related activity."); Eaves v. Harris, 258 Ga. 1, 364 S.E.2d 854, 857 (1988) (finding that suspension of County Commissioner after indictment, "does not offend traditional notions of fair play and justice."). But see Stewart v. United States Immigration and Naturalization Service, 591 F.Supp. 576, 579-80 (S.D.N.Y.1984) (distinguishing Brown and finding that altercation involving INS agent with revolver issued but not required *506 to be carried by INS, had no conceivable relation to INS business), rev'd, 762 F.2d 193 (2d Cir.1985) (reversing for failure to exhaust administrative remedies). The MPD in the current case did not act to suspend Broadus until his involvement in the criminal justice system had reached the indictment stage. The actions which gave rise to the indictment in this case occurred on May 22, 1981. The grand jury returned a two-count indictment on October 14, 1981. Broadus was not placed in non-duty pay status until October 30, 1981, and it was not until November 29, 1981, that he was suspended without pay.
We disagree with the OEA and the trial court that because the court in Brown construed a federal statute, specifically supplanted by the CMPA, that the analysis set forth in that case is not available in the current case. See D.C.Code § 1-633.2(a)(8) (1981).[6]Brown made clear that an indictment standing alone, is a sufficient fact in and of itself to support a finding of cause to justify suspension of an employee for a work-related offense. As the court stated:
Although it is well settled that an indictment is not evidence of the acts charged therein, the agency here relied solely on the fact of petitioners' indictment in suspending them; since the agency did not rely on petitioners' commission of the alleged criminal acts, the indictment was not used as evidence of those acts. An indictment is always evidence that the persons named have been indicted by a grand jury on the charges recited. From the record, it is clear that this was the only evidentiary use made of the indictment and that petitioners neither objected to its use in this manner nor disputed the fact of their indictment.
Brown, supra, 715 F.2d at 677 (footnote omitted). The same is true in the current case: Broadus has not disputed the fact of his indictment, and the MPD insists that it relied upon the fact of the indictment, and not the alleged criminal acts, to justify the suspension for a failure of good behavior.
We are similarly unpersuaded by Broadus' argument that the analysis set forth in Brown is unavailable because that court addressed a statute with different language thus forcing the MPD "to stretch the language of each so as to analogize the provisions." Specifically, Broadus argues in his Answer to the Petition for Review that:
The Federal statute requires a showing of cause as it affects the efficiency of the service. A nexus between the alleged act and the employee's duty must be shown. In the District of Columbia Act the language is distinct and different. It requires off-duty activity of such a nature that causes discredit to the agency or [his] employment. That language, as analyzed correctly by the OEA requires a showing greater than the mere fact of an indictment.
The seventeen volume legislative history of the CMPA is silent on the particular evidentiary basis required to support a finding of cause under Section 1-617.1(d)(16).[7] *507 Cognizant of the fact that the Council did not have the benefit of the Brown decision, which was decided subsequent to the promulgation of the CMPA, other factors support the MPD's interpretation of Section 617.1(d)(16) and the adoption of the Brown rationale.
First, the nexus between the alleged wrongdoing and the employee's job performance which the court in Brown required in order to find cause, see supra, 715 F.2d at 666, is provided for in the instant case by the very terms of the statute. When possible, the words of a statute must be construed by their plain meaning and in their ordinary sense. Barbour v. District of Columbia Department of Employment Services, 499 A.2d 122, 125 (D.C. 1985); see also United States v. Edelen, 529 A.2d 774, 778 (D.C.1987) (finding that if language of statute is plain, sole function of the courts is to enforce statute according to its terms) (citations omitted). Section 1-617.1(d)(16) states that cause may be found for "[o]ther failure of good behavior during duty hours which is of such a nature that it causes discredit to his or her agency," but goes on to state "the provisions of this paragraph shall be applicable to uniformed members of the Metropolitan Police Department during both on-duty and off-duty hours." Clearly, this statutory language on its face, was meant to encompass the present scenario where a police officer is indicted on charges for assault with intent to kill and malicious destruction of property stemming from the officer's alleged misuse of his service revolver. Only through contorted interpretive somersaults can Broadus' position that this statute does not provide a nexus to work-related activities of the District's police officers be sustained.
Second, the evidentiary standard of proof required by the OEA in the instant case and by the agency in Brown appears to be the same: both agencies require that a finding of cause be proven by a preponderance of the evidence. See Employee, supra, 31 D.C.Reg. at 5384 ("an agency's decision to suspend an employee will only be sustained if it is based on law and supported by a preponderance of the evidence.") (citing OEA Rule 614.2(b)); Brown, supra, 715 F.2d at 665 ("[a]n agency's decision to suspend an employee may be upheld by the MSPB on appeal only if it is `supported by a preponderance of the evidence.'") (citing 5 U.S.C. § 7701(c)(1)(B) (1982)). The court in Brown affirmed the agency's decision that an indictment sufficiently met this burden. In Employee, however, the OEA dismissed the use of an indictment as insufficient to meet the preponderance standard, and stated that the preponderance standard is met only by a showing of "provable misconduct." Supra, 31 D.C. Reg. at 5384.
Significantly, the OEA gives no guidance as to how alleged misconduct can be proven prior to the trial on the criminal charges. Presumably, if the indictment is insufficient, an independent formal hearing, in effect a "mini-trial," is necessary to establish whether or not the employee is guilty of the alleged wrongful acts, sufficient to establish a failure of good behavior. See Brown, supra, 715 F.2d at 668. Problems with this sort of mini-trial can be envisioned both for the defendant and the government. If required, the administrative action could create fifth amendment self-incrimination problems, force the production of evidence and expose the basis for the defense in advance of trial. Securities & Exchange Commission v. Dresser Indus., 202 U.S. App.D.C. 345, 353, 628 F.2d 1368, 1376, cert. denied, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980); see also Brown, supra, 715 F.2d at 668; Peden v. United States, 512 F.2d 1099, 1103, 206 Ct.Cl. 329 (1975). Similarly, the government might wish to prevent the defendant from "broadening his rights of criminal discovery." Dresser, supra, 628 F.2d at 1376 n. 20 (citing Campbell v. Eastland, 307 F.2d 478 (5th Cir.1962), cert. denied, 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963)).[8]
*508 The OEA, apparently aware of the potential problems such a mini-trial might pose, urges that its decision not be construed as advocating that the MPD initiate a disciplinary action against a police officer based on provable misconduct while criminal action is pending before a court on the same set of facts. Such a course of action, they cautioned, "would be decidedly unwise and [might] lead to improper interference with the criminal process. [The MPD] has other courses of action such as administrative leave or assigning the employee to a less sensitive job." Employee, supra, 31 D.C. Reg. at 5386.
The practical consequence of the OEA's position is to disallow all suspensions without pay for cause based on behavior that is allegedly criminal, since an indictment is insufficient and a hearing is "unwise," thus leaving the MPD with one option: to suspend indicted police officers with pay, pending the outcome of the criminal trial. Yet the decision as to who will bear the risk of an erroneous adverse action pending the outcome of the criminal trial, through the payment or nonpayment of pay, is a fundamental question in this case. The MPD has decided that the indicted officer should bear the risk that an adverse action had been improperly pursued through suspension without pay. The alternative would be to place the risk on the police department, which would be put in the difficult position of recouping the pay accumulated by an officer who is later convicted of the alleged criminal acts. Such risk allocation, predicated as it is on the fact of an indictment, appears to us to be what the statute contemplates.
Given that we do not disturb the MPD's decision that the employee should bear the risk of an erroneous adverse action, the police department has two choices if the officer is subsequently acquitted. It may have a new adverse action hearing to determine whether the underlying facts supported a failure of good behavior, or it may reinstate the officer with back pay. We agree with the court in Brown, that "were reparations not available for the subsequently acquitted and reinstated employee, we would have grave doubts about the lawfulness of an indefinite suspension based solely on an employee's indictment on work-related charges." Brown, supra, 715 F.2d at 669.

IV.
The OEA awarded Broadus back pay based on its finding that the MPD had improperly suspended him without sufficient cause. Formerly, the ability to award back pay to District employees was authorized pursuant to the Federal Back Pay Act, 5 U.S.C. § 5596 (1982). See Employee v. Agency, 31 D.C.Reg. 5342, 5344 (October 26, 1984); District of Columbia v. Hunt, 520 A.2d 300, 304 (D.C.1987). The applicability of this section was specifically repealed under D.C.Code § 1-633.2(a)(5)(6); however, the Mayor's Memorandum Number 81-53, provides that the Back Pay Act continues to apply to the District pursuant to D.C.Code §§ 1-612.4 and 1-633.1 (1981). See supra, 31 D.C.Reg. at 5344. The OEA has stated that "an employee is not entitled to back pay unless his loss of pay was due to an unjustified or unwarranted personnel action." Id. Since we hold that Broadus was suspended based on sufficient cause, Broadus' award of back pay is reversed.
Further, the Superior Court erred in awarding Broadus attorney's fees since Broadus did not prevail on his claim and such fees were not warranted in the interest of justice. See Hunt, supra, 520 A.2d at 304-05.
Reversed.
NOTES
[*] WILLIAM C. PRYOR was Chief Judge at the time this case was argued. His status changed to Senior Judge on November 2, 1988.
[1] Divergent accounts of the event were given at the hearing before the Police Adverse Action Board. Several of those present stated that Broadus threatened to kill one Samuel James, and fired his gun, hitting a car window instead. Broadus stated that the first shot was fired when someone grabbed his arm, that the gun went off the second time after he accidentally tripped and that the third shot was fired out of frustration.
[2] The notice stated:

Your suspension is being proposed for the following reason:
Cause: Failure of Good Behavior during off-duty hours which is of such a nature that it causes discredit to his or her Agency or his or her Employment.
* * * * * *
In view of the law enforcement mission of this Department and due to the serious nature of the reason in support of your indefinite suspension, it is believed that your retention in active duty status would not be in the best interests of the public, good morale, or efficient service of the Metropolitan Police Department.
[3] Broadus was subsequently convicted of the lesser-included offense of assault with a deadly weapon, see United States v. Van E. Broadus, No. F6021-81C (D.C.Super.Ct. June 13, 1983), aff'd, Van E. Broadus v. United States, No. 83-864 (D.C. May 16, 1985).
[4] In Brown, two U.S. Border Patrol agents were indicted on charges of conspiracy to defraud the United States by interfering with the functions of the Border Patrol, and willfully violating the civil rights of suspected illegal aliens. Supra, 715 F.2d at 664. The day after their indictment, the agents were notified that the U.S. Border Patrol proposed to suspend them indefinitely without pay pursuant to 5 U.S.C. § 7513(b)(1) (1982) which allows the agency to suspend an employee if "there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed." After meeting with the Chief Patrol Agent, both agents were suspended indefinitely without pay.

The Merit Systems Protection Board affirmed the agency's suspension without further evidence from the Border Patrol Agency, finding that "the indictment itself satisfied the statutory requirement that the agency action be `supported by substantial evidence.'" Brown, supra, 715 F.2d at 664. The D.C. Circuit affirmed.
[5] (10) Conviction of a felony. A plea or verdict of guilty, or a conviction following a plea of nolo contendere, to a charge of a felony is deemed to be a conviction within the meaning of this section. Notwithstanding the foregoing, cause under this paragraph with regard to uniformed members of the Metropolitan Police Department is deemed to be the commission of any act which would constitute a crime. D.C. Code § 1-617.1(d)(10) (1981).
[6] In Brown, the relevant statute stated that an employee could be suspended for "disciplinary reasons," 5 U.S.C. § 7501(2) (1982) and for "such cause as will promote the efficiency of the service." Id. at § 7513(a). The court read these statutes in conjunction with 5 U.S.C. § 7513(b)(1) which it interpreted to sanction suspensions based on "reasonable cause to believe the employee has committed a crime." See Brown, supra, 715 F.2d at 666.
[7] Although both parties characterize the legislative history as supportive of their respective positions, we note that prior to the passage of the CMPA, the police department and mayor could suspend police officers "with or without pay ... for any offense against the laws of the United States or the laws and ordinances or regulations of the District of Columbia" and provided that authority could be exercised "whether before or after conviction thereof." Act of June 8, 1906, ch. 3056, § 4, 34 Stat. 221-22 (1906) (codified at D.C.Code § 4-117 (1981)). The regulations promulgated pursuant to this provision are now published as part of Title 6A of the DCMR. The Council gave the Chief of Police authority to suspend summarily any police officer, see 6A DCMR § 800.12 (1984) and gave authority to any officer holding a supervisory position the power to suspend any subordinate, see 6A DCMR 200.24 (1984). Such regulations remain in effect until new rules are issued pursuant to the CMPA, Section 1-633.1(a) (1981). These regulations are consistent with a legislative intent to allow the police force broad discretionary powers, not less, as Broadus would have us find.
[8] The MPD, in its brief, raises further possible scenarios: an officer involved with criminal work might have to cooperate with the same prosecutors who are attempting to obtain a conviction against the officer; any testimony given while under indictment is suspect and subject to impeachment; and if convicted, the officer might have to be returned from prison to give testimony against other criminals that he arrested while under indictment.