**DISTRICT OF COLUMBIA, Appellant,**

v.

**Richard A. GREEN, Appellee.**

**No. 95–CV–1429.**

District of Columbia Court of Appeals.

Argued Dec. 11, 1996.

Decided Jan. 9, 1997.

Charles L. Reischel, Deputy Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel, and Edward E. Schwab, Assistant Corporation Counsel, for appellant.

Robert E. Deso, Washington, DC, for appellee.

Before FERREN, FARRELL, and REID, Associate Judges.

FARRELL, Associate Judge.

In *District of Columbia Metro. District of Columbia Metropolitan Police Dep't v. Broadus,* 560 A.2d 501 (D.C.1989), we held that the filing of a criminal indictment for offenses committed by an off-duty police officer was "cause" for suspension without pay from the police force under D.C.Code § 1–617.1(d)(16) (1981). The question this appeal presents is whether the arrest of an officer upon a warrant, together with consideration by police officials of the investigative documents underlying the warrant, may similarly provide cause for suspension under the statute. We hold that it may, and that in the circumstances of this case the police had reasonable cause to suspend appellee, who had been arrested on charges of sexual assault, while the criminal process took its course. We further hold that subsequent events did not undermine, but rather confirmed, the validity of the suspension decision. We therefore reverse the decision of the Superior Court upholding an award of back pay to appellee by the Office of Employee Appeals (OEA) for the period of the suspension.

## I. The Facts

On February 21, 1986, appellee Green, a member of the Metropolitan Police Department (MPD), surrendered to the Bladensburg, Maryland police pursuant to a warrant for his arrest. The warrant, issued by a judicial officer of the District Court of Maryland for Prince George's County, contained a statement of charges alleging that Green had sexually assaulted Sarah W. in the parking lot of a restaurant in Prince George's County on February 16, 1986. On being notified of the arrest, the MPD placed Green on administrative leave with pay. On February 24, 1986, the MPD Internal Affairs Division issued a preliminary report and recommendation that, "[i]n view of the facts and circumstances contained [t]herein," Green be suspended indefinitely without pay. On March 14, Green received a formal Advance Notice of Proposed Suspension Without Pay alleging conduct on his part that brought discredit upon the MPD and informing him of his right to reply to the proposed suspension. Green replied to the notice through counsel on March 18. The next day, he was indicted in the Circuit Court for Prince George's County on six counts including assault with intent to rape and assault and battery.

On March 31, 1986, the MPD issued its Final Notice of Decision to Suspend Without Pay, effective April 1, stating that the justification in the Advance Notice was "fully supported and warrants [Green's] suspension." On April 10, 1986, Green appealed the suspension to OEA. At a pre-hearing conference, the OEA hearing examiner inquired whether the MPD's decision was based upon any information other than that set forth in the arrest warrant application. In response, the MPD submitted four documents prepared during the Maryland police investigation which had formed the basis for the decision to suspend Green. These included the police offense report of February 17, 1986, recounting the victim's statement as follows:

> On 2–17–86 at approx. 01.15 hrs victim advised [the report] writer that on 02–16–86 at approx. 0300 hrs while at the Cross Roads restaurant/bar with some friends[,] victim advised her friends to go ahead and leave[,] that she was going to wait awhile because she (victim) had been drinking and did not want to drive. At that point the suspect introduced himself and said he

would let victim sit in his car and showed a police badge. Victim then got into suspect's veh. and suspect drove victim to her veh. parked in the back alley portion of the parking lot. Victim then got into her veh. and started it up. Victim then got back into suspect's veh. while hers (victim's) was warming up. Suspect then started trying to kiss the victim, victim advised suspect to stop. Suspect then started grabbing victim's breast, then got on top of victim and placed his hand on victim's vaginal area. Victim started yelling and was able to open car door and victim and suspect fell out. Victim got up[,] got into her veh.[,] locked door and pulled off. Suspect followed her[-] victim in his veh. but victim lost suspect.

Victim believes suspect said he was a D.C. police officer.

A second document, the victim's statement in her own hand, confirmed *inter alia* that "this guy . . . introduced himself, said he would let me sit in his car and showed my friends his police badge"; the friends "looked at [the badge] and said something to the effect that this guy looks o.k." She described Green's actions in then feeling her breast, forcing her seat back, climbing on top of her and putting his hand between her legs despite her yells for him to stop. When she managed to escape his hold and flee to her own car, locking the door, "he started toward [her]," and as she drove away "he started following [her]." When she got away from him she wrote down the plate number of his truck, and in a subsequent photo identification identified him as her assailant.

Green's own statement to the Bladensburg police at the time of his arrest was memorialized in the Report of Investigation also relied on by the MPD. He admitted that he had met the woman outside the Crossroads Restaurant and that she had sat in his truck. He had been drinking but was not drunk. He "displayed his ID folder to the lady's companions and told her he was a police officer[,] because he wanted to insure [them] that she would be in good hands." He admitted kissing her and "remarked[:] It just happened." While denying that he had touched her breasts or groin and forcing the

seat back and lying on top of her, he admitted that he "had sex on my mind, probably . . . what else would I have on my mind, I am married. . . ."

At the OEA hearing on October 21, 1987, Carl F. Profater, Assistant Chief of Police and Administrative Service Officer for the MPD, testified that the decision to suspend Green was based upon his conduct as reflected in these documents, not merely his arrest. The investigative reports of the Bladensburg police, together with Green's response to the proposed suspension, satisfied the MPD "that a crime had been committed" so as to trigger its duty to suspend him under § 1–617.1(d)(16): "based on the official documents of [another] police agency, we hold that to be evidence enough that a misconduct has occurred based on their investigation and obtaining statements from witnesses and so forth."

Some eight months before the OEA hearing took place, appellee had gone to trial on the criminal charges in the Circuit Court for Prince George's County. He waived jury trial and stipulated to the evidence the state would present, including the victim's testimony. The trial judge found him not guilty as to assault with intent to rape, but, as to the assault and battery and one of the fourth-degree sex offenses, concluded:

[A]s to assault and battery, touching, grabbing, and assaulting, battering of the victim without her consent obviously from the stipulated facts she did not consent to any of this. There was the touching of the breasts, and the hand in the vaginal area. I think that I am convinced beyond a reasonable doubt, and I think the [d]efendant is guilty of the assault and battery . . . and I also think that his actions also constitute a fourth degree sex offense . . . so on [those two counts] I find him guilty beyond a reasonable doubt.

The judge sentenced Green to concurrent terms of eighteen months and one year in prison, but suspended execution of the sentence. Five months later, the judge reconsidered the sentence and instead imposed probation before judgment under Article 27,

§ 641 of the Maryland Code.[1] At the OEA hearing, the hearing examiner received in evidence the transcript of the criminal trial stating that he would, "if it is considered relevant, give it whatever weight I can assign it." Green himself also testified at the hearing, and while admitting to having kissed and petted with Sarah W., denied forcing himself upon her.

The OEA hearing examiner recommended reversal of the suspension, concluding that he could "find no other basis upon which [the MPD] suspended [Green] except the arrest itself." The examiner discounted the victim's stipulated testimony at the criminal trial as he could not "examine her demeanor and evaluate her credibility," in contrast to Green's "credible" testimony denying the offenses. The examiner took note of this court's intervening decision in *Broadus, supra,* that an indictment suffices to establish cause for suspension, but found that decision beside the point because *Broadus* "did not address the issue of whether an arrest is sufficient grounds."

An OEA reviewing panel reversed and remanded the case to the hearing examiner. It recognized that, in light of *Broadus* and the intervening indictment, the MPD "had cause to suspend [Green] and its action must, therefore, be sustained." But the panel questioned whether the MPD could "permanently deprive [Green] of back pay" in view of two factors. One, the Maryland court had not entered a judgment of conviction against Green but instead had placed him on probation before judgment. Two, the MPD had not terminated Green in the wake of the

criminal proceeding but instead had reinstated him. The panel had reference here to the fact that, although an MPD trial board had recommended Green's termination following an evidentiary hearing at which Green, the victim, and others testified, an arbitrator had ordered reinstatement after finding that dismissal was too harsh given Green's fifteen-year MPD record and his recent efforts at alcoholic rehabilitation—notwithstanding that he had committed the criminal offenses.[2] On remand with instructions to reconsider the back pay issue, the hearing examiner—a new one—again found *Broadus* inapplicable (despite the OEA panel's apparent contrary determination) because the record contained neither an assertion nor evidence that the MPD in fact had relied on the indictment in suspending Green. The examiner endorsed the first hearing examiner's decision to credit Green's live testimony over the documentary evidence submitted by the MPD, and again recommended reversal of the suspension and award of back pay. The OEA reviewing panel accepted the recommendation, reversed the suspension, and directed reimbursement to Green of "all pay and benefits lost during his suspension without pay." The full OEA Board affirmed, as did the Superior Court on the District's petition for review.

## II. Discussion

### A.

Green's suspension was an "adverse action," which meant that he could be suspended without pay only for "cause." D.C.Code § 1–617.1(b) (1992). Like the po-

---

1. Md.Code Ann. of 1957, Art. 27, § 641 reads in pertinent part:

   (a) Probation after plea or finding of guilt; terms and conditions; waiver of right to appeal from judgment of guilt—(1)(i)1. Whenever a person accused of a crime pleads guilty or nolo contendere or is found guilty of an offense, a court exercising criminal jurisdiction, if satisfied that the best interests of the person and the welfare of the people of the State would be served thereby, and with the written consent of the person after determination of guilt or acceptance of a nolo contendere plea, may stay the entering of judgment, defer further proceedings, and place the person on probation subject to reasonable terms and conditions as appropriate.

2. In this regard the arbitrator stated:

   The record before me contains a judicial decision, based on stipulations offered by the State of Maryland and the Grievant, that the Grievant was guilty, beyond a reasonable doubt, of assault and battery and a fourth degree sexual offence. The Panel at the Police Trial Board, after hearing witnesses and examining documents, accepted Ms. W's testimony concerning the incident and found that "something truly offensive or objectionable had in fact happened to her". Even if I were to ignore the judicial and Panel findings, the transcript makes it clear that at some point the Grievant persisted in unwelcome advances which caused Ms. W to scream and to open the truck door in an effort to get away from him.

lice officer in *Broadus,* he was suspended on the authority of § 1–617.1(d)(16), which provided at the time of the suspension:

> [C]ause shall be defined as ... [o]ther failure of good behavior [by an employee] during duty hours which is of such a nature that it causes discredit to his or her agency or his or her employment. Notwithstanding the foregoing, the provisions of this paragraph shall be applicable to uniformed members of the Metropolitan Police Department during both on-duty and off-duty hours.[3]

In *Broadus,* as explained earlier, we held that "the fact of an indictment ... constitutes sufficient evidence to establish cause under ... § 1–617.1(d)(16) to support an adverse action by the police department against one of its officers." 560 A.2d 501. In part quoting from *Brown v. Department of Justice,* 230 U.S.App. D.C. 188, 193, 715 F.2d 662, 667 (1983), we stated:

> Certainly, at some point along the continuum of an employee's involvement in the criminal justice system, evidence of that involvement alone gives rise to reasonable cause to believe the employee has committed a crime.
>
> At one end of the continuum, *conviction* of a crime would most certainly constitute cause for suspension for a failure of good behavior, even where the agency lacked any actual evidence of the alleged criminal acts.... At the other end of the continuum, mere questioning or investigation by police officers into the alleged criminal acts of an employee would seem to constitute insufficient evidence "of a failure of good behavior" to support a suspension.

*Broadus,* 560 A.2d at 505 (citations and footnotes omitted). In concluding that the fact of indictment lay comfortably within these extremes in supporting suspension for cause, we stressed that if an indictment were insufficient, "[p]resumably ... an independent formal hearing, in effect a 'mini-trial,' [would be] necessary" to justify suspension, which could be prejudicial to both the officer-defendant and the government in the criminal case. *Id.* at 507. We further pointed out that indictments must be supported by probable cause and are not "issue[d] on abstract charges," and that the grand jury's role "serves to protect citizens against unfounded criminal prosecutions." *Id.* at 504–05.[4]

In the present case, the Maryland indictment concededly had been issued before Green was suspended, but the OEA review panel discounted this fact because (accepting the examiner's finding on remand) it concluded that the indictment had played no actual part in the decision to suspend. The District urges rejection of this analysis: the test of "cause," it argues, should be the *objective* basis which the MPD had to suspend Green at the time it did so, including the fact of indictment, when the only plausible reason it did not rely on the indictment (or at least did not *say* it was doing so in the suspension decision) was OEA's erroneous pre-*Broadus* understanding of the statute that an indictment was not cause. *See Broadus,* 560 A.2d at 502–03 (noting agency's previous interpretation of statute). There is merit to this argument, but we choose not to rest our decision on it. OEA committed a more basic error by concluding that the documentary evidence undeniably relied on by the MPD, including but not limited to the arrest warrant issued by a Maryland judge, was insufficient to justify the suspension.

*Broadus* held that an indictment is sufficient cause for suspension under § 1–617.1(d)(16); it did not hold that it is a necessary cause. Whether evidence short

---

3. The paragraph was revised in 1990 and now defines cause to include "[o]ther conduct during and outside of duty hours that would affect adversely the employee's or the agency's ability to perform effectively."

4. In *Broadus* we recognized and did not take issue with OEA's standard requiring an agency to prove cause for suspension under § 1–617.1(b) by a preponderance of the evidence, but we implicitly held that the fact of an indictment meets that burden. 560 A.2d at 507. We there-by rejected Green's contention here that the hearing examiner could properly refuse to accept evidence offered without opportunity for cross-examination as capable of demonstrating cause when contrary live testimony (here Green's) is presented. We have rejected such categorical dismissal of hearsay evidence in other administrative contexts as well. *See, e.g., James v. District of Columbia Dep't of Employment Servs.,* 632 A.2d 395 (D.C.1993).

of the fact of indictment will justify suspension depends, first of all, on where it places the employee's conduct " 'along the continuum of . . . involvement in the criminal justice system.' " 560 A.2d at 505 (quoting *Brown, supra* ). Had Green been suspended as a result of "mere questioning or investigation by police officers into the alleged criminal acts," cause probably would not have been established. *Id.* But Green had been arrested for the crimes based upon a warrant issued by a neutral and detached judicial officer, *see Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), who found probable cause to believe he had committed the crimes. Furthermore, the Internal Affairs Division of the MPD had reviewed the documents generated by the Bladensburg police investigation, spoken with the primary investigating officer, and weighed this information against Green's response to the proposed suspension. The documents relied on contained strong internal evidence of the reliability of the charges. Green admitted meeting the victim, kissing her with "sex on [his] mind" ("It just happened"), and displaying his police badge with the avowed intent to reassure her and her companions. He thus corroborated material aspects of the victim's detailed description of how he assaulted her after assuring her with his badge that she could safely wait in his car. She had written down his license tag number and reported the assault to the police within a day. Identity was not an issue.

Given the seriousness of the crimes charged and their obvious bearing on Green's fitness to remain on duty pending their resolution,[5] we hold that the information considered by the MPD before suspending him was enough to establish cause for the suspension. That information included more than the arrest or issuance of an arrest warrant; indeed, "[w]e are not prepared to conclude . . . that the issuance of an arrest warrant [a typically *ex parte* process] . . . is the equivalent to more formal proceedings" such as the grand jury indictment in *Broadus. Dunnington v. Department of Justice,* 956 F.2d

1151, 1157 (Fed.Cir.1992). But, as did the government agency in *Dunnington,* the MPD went beyond the fact of the arrest warrant and "assure[d] itself that the surrounding facts [were] sufficient to justify [the] summary action [of suspension]." *Id.* The *Dunnington* court held that the agency was not bound to conduct its own "factfind[ing]" but instead could rely on the "additional factual material culled from the [criminal] complaints and supporting allegations," including "the supporting statements from the complaining witnesses." *Id.* at 1157–58. We agree, and hold that the supporting material here together with the warrant established reasonable cause.

### B.

▊ The remaining question in this back-pay dispute is whether events subsequent to the suspension cast doubt on its validity up to the point when Green, pursuant to the arbitration award, was reinstated. We hold they do not.

In *Brown, supra,* the court stated that "the final disposition of the charges is vitally important to an analysis of the relief due" the employee-petitioner, since a suspension based "on work-related charges *must necessarily* be a conditional suspension, conditioned on the outcome of the employee's involvement in the criminal justice system." 230 U.S.App. D.C. at 194–95, 715 F.2d at 668–69 (emphasis in original). In *Broadus* we agreed that if the officer is subsequently acquitted of the criminal charges, the MPD must either reinstate him with back pay or "have a new adverse action hearing to determine whether the underlying facts supported a failure of good behavior." 560 A.2d at 508; *see also Brown,* 230 U.S.App. D.C. at 195, 715 F.2d at 669. ("When an employee . . . is acquitted and the agency chooses to reinstate him or her, it would be unfair to penalize the employee for having become a target of the criminal justice system"). In the present case, the OEA treated the ultimate disposition of the Maryland charges on the basis of

---

5. As the arbitrator stated in the termination proceedings, "[Green's] misconduct was serious. He used his status as a police officer to gain Ms.

W's confidence to the extent that she went into his truck."

"probation before judgment" as the legal equivalent of an acquittal. That is wrong as a matter of law. On the basis of a stipulation as to what the state's proof would be, the Maryland trial judge found Green guilty beyond a reasonable doubt of two charges, including assault and battery. By its terms, the Maryland statute requires a finding of guilt (or a plea of guilty or nolo contendere) before probation without verdict may be imposed. Note 1, *supra; see Myers v. State*, 303 Md. 639, 496 A.2d 312, 315–16 (1985). The fact that, absent revocation and imposition of judgment, no "conviction" results from this procedure and that the guilty finding may be given only limited effect in Maryland administrative proceedings, *Powell v. Maryland Aviation Admin.*, 336 Md. 210, 647 A.2d 437 (1994) (guilty finding underlying probation before judgment is admissible as evidence in administrative proceeding but may not be given preclusive effect), is beside the point here. Nothing in the Maryland criminal proceeding cast doubt on the original decision by the MPD that Green had committed misconduct warranting suspension. For similar reasons, the arbitrator's decision reinstating Green is inapposite: while noting that live testimony at the police trial board hearing on termination confirmed the Maryland finding of guilt, the arbitrator concluded, in effect, that appellant's then–2½ year suspension without pay was penalty enough in view of his rehabilitation and prior exemplary record as an officer. The termination proceeding, far from impeaching the suspension, effectively ratified it.

The order awarding Green back pay is, therefore,

*Reversed.*