Robert J. SHERMAN, Petitioner,

v.

DISTRICT OF COLUMBIA COMMISSION ON LICENSURE TO PRACTICE the HEALING ART, Respondent.

No. 83–129.

District of Columbia Court of Appeals.

Argued Jan. 5, 1984.

Decided April 24, 1984.

John W. Karr, Washington, D.C., for petitioner.

Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., with whom Inez Smith Reid, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Edward E. Schwab, Asst. Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before KERN, NEBEKER and PRYOR, Associate Judges.

PER CURIAM:

This is the second time the District of Columbia Commission on Licensure to Practice the Healing Art (the Commission) has come before this court in an effort to revoke petitioner's license to practice medicine in the District of Columbia. The Commission's first decision to revoke was rendered in 1977 and the facts of petitioner's case are fully detailed in the opinion this court issued in 1979 when it reviewed the Commission's first decision. *Sherman v. Commission on Licensure to Practice the Healing Art*, 407 A.2d 595 (D.C.1979) (*Sherman I*).

Our conclusion upon the petition for review in *Sherman I* (at 597) was that:

> The Commission's reliance on inappropriate findings of fact and conclusions of law requires that we remand the case for more specific conclusions. (Footnote omitted.)

We went on to explain:

> The Commission's conclusions of law in the revocation proceedings do not make clear the standards of conduct applied to Dr. Sherman, nor do they indicate the significance of the improper evidence

upon which the Commission chose to rely. Its findings and conclusions thus do not meet the criteria established by the District of Columbia Administrative Procedure Act .... (Footnote omitted.)

We spelled out in *Sherman I* (at 601–02) our difficulties with the Commission's findings and conclusions:

> The Commission, over objection, received into evidence the guidelines for the operation of outpatient abortion clinics which were drawn up by the District of Columbia Medical Society and by Planned Parenthood, Inc. These guidelines were admitted as evidence of prevailing community standards against which Dr. Sherman's practice could be measured. The Commission's conclusions of law ... repeatedly relied upon noncompliance with the guidelines as per se evidence of malpractice.

> \*      \*      \*      \*      \*      \*

> The guidelines admitted at the hearing had *not* been adopted or promulgated by either the Commission or by the Council of the District of Columbia. To rely upon their violation as per se evidence of Dr. Sherman's responsibility for [his patient's] death, or of his failure to use proper sterilization techniques, was to treat the guidelines of a private group of professionals as having the force of public law. (Footnote omitted; emphasis added.)

In *Sherman I* (at 603) we also acknowledged that our decision to remand was "influenced by the confused nature of some of the Commission's decision." We went on to state that "[t]he conclusions of law, while extensive, do not clearly indicate just how the Commission moved from its findings to its ultimate conclusions about the proven specifications." We concluded (at 603):

> [W]e cannot say with any certainty that the Commission did not rely significantly on Dr. Sherman's noncompliance with private guidelines.

Accordingly, we remanded the case to the Commission for further proceedings.

We now have before us for review another Decision the Commission issued in January 1983 pursuant to our 1979 remand. The Decision, consisting of some 50 pages, describes the procedural history of the case, details the evidence adduced at the hearing held on 14 different days over the two-year period of 1976 and 1977, and makes Findings of Fact and a Conclusion of Law. The Commission's ultimate conclusion in its Decision on Remand is that "the charge of misconduct [against petitioner] has been sustained based upon the evidence adduced at the 1976–1977 hearing before the Commission" and hence petitioner's license to practice medicine should be revoked upon the entire record. The Decision is dated January 7, 1983, and bears the names and signatures of eight members of the Commission. None of these Commissioners had participated in rendering the Commission's first decision in 1979.

Petitioner points to a statement in the Decision of the Commission on Remand:

This license revocation was appealed ... to the D.C. Court of Appeals which rendered its decision ... remanding the case to the Commission for further consideration. Thereafter, a panel of three Commissioners was assigned to review the full record and issue a new determination consistent with the direction of the ... Court of Appeals.

Petitioner argues that "between September 2, 1977, the date of the decision reviewed by this Court in *Sherman I,* and January 7, 1983, the date of the Commission's post-remand decision, not one of the Commissioners who participated in the decision now before the court for review personally heard the evidence in this proceeding. Furthermore, only three of the eight present members of the Commission who signed the post-remand decision actually read and

reviewed the record of the evidentiary hearing ...." Petitioner asserts that under these particular circumstances the Commission has violated Section 1509(d) of the DCAPA[1] and the case must be remanded for the Commission to comply with this statute.

Section 1509(d) provides in pertinent part:

*Whenever* in a contested case *a majority of those who are to render the final ... decision did not personally hear the evidence, no ... decision* adverse to a party to the case ... *shall be made until a proposed ... decision,* including findings of fact and conclusions of law, *has been served upon the parties* and an opportunity has been afforded to each party adversely affected to file exceptions and present argument to a majority of those who are to render the final decision, who ... shall personally consider such portions of the ... record ... as may be designated by any party. (Emphasis added.)

We are persuaded upon consideration of the statute and the record before us that the Commission's Decision failed to comply with the mandate of Section 1509(d). Eight members of the Commission rendered the Decision yet, according to the Decision on Remand, only three Commissioners were "assigned to review the full record." Under those particular circumstances, *viz.,* eight members rendering the decision but only three members reviewing the full record, "a majority of those who are to render the final ... decision did not personally hear the evidence...." Accordingly, Section 1509(d) requires us to remand the case to the Commission to enable it to issue a "proposed decision" so that petitioner has an opportunity to file exceptions and present argument to the eight members who are rendering the decision.[2]

---

1. D.C.Code §§ 1–1501 through 42 (1981).

2. It is undisputed that petitioner was afforded no opportunity to address argument to the Commission before it issued its 1983 decision now on review before us.

The government first appears to acknowledge the salutary purpose of Section 1509(d) by citing to and quoting from the legislative history of the Revised Model State Administrative Procedure Act § 11 (1961), which is similar to the DCAPA: "The purpose of this Section is to make certain that those persons who are responsible for the decision shall have mastered the record, either by hearing the evidence, or reading the record or at the very least receiving briefs and hearing oral argument." However, the government goes on to argue that Section 1509(d) is not applicable to the instant case because the remand to the Commission we ordered in *Sherman I* was only for the limited purpose of clarifying the Commission's 1977 revocation order.

We do not agree. In *Sherman I*, as we have described above, the court specifically directed the Commission to make "more specific conclusions;" we referred to "the confused nature of some of the Commission's decision;" and, we concluded that "[t]he conclusions of law do not clearly indicate just how the Commission moved from its findings to its ultimate conclusions about the proven specifications." We deem our remand in *Sherman I* to call for evidentiary review and redetermination rather than mere clarification. Apparently, the Commission so read our remand in 1979. Thus, the Commission issued a Decision in 1983 of some 50 pages, recounting the evidence, again making findings and conclusions, and acknowledging in such Decision on Remand that three of its members were "assigned to review the full record *and issue a new determination.*" (Emphasis added.) Accordingly, we reject the government's contention that the Decision before

us now for review is a mere clarification of the Commission's 1977 order, rather than a redetermination. In sum, we deem it to be an adverse final decision subject to the terms of Section 1509(d).

The government also argues that Section 1509(d) is not applicable because three-member panels of the Commission are authorized under the relevant portions of the Commission's organic statute, D.C.Code §§ 2–1326(a)(9)(A) and (B) (1981) to *both* hear *and* determine revocation of license cases.[3] While we do not disagree with this reading of the statute, it is not relevant to the case before us. Here, eight members of the Commission chose to render a Decision revoking petitioner's license, although the statute constituting the Commission provides that a panel of three members has authority, after hearing evidence, to revoke a practitioner's license.

■      In sum, we conclude upon the facts of this case that since only three members of the Commission were assigned to review the full evidentiary record yet eight members of the Commission then determined the petitioner's license should be revoked, the case must be remanded to the Commission in accordance with Section 1509(d). In this way, the Commission is enabled to comply with the APA by serving a proposed Decision upon petitioner so as to accord him an opportunity to file exceptions and present argument to the eight members of the Commission who will render the final decision.[4] *Wallace v. District Unemployment Compensation Board,* 289 A.2d 885 (D.C.1972) (Failure to issue proposed order or decision pursuant to D.C. Code § 1–1509(d) requires vacation of ad-

---

**3.** Section 2–1326(9)(A) and (B) states in relevant part:

(A) A panel consisting of 3 members of the Commission may serve as a hearing panel in each case in which a hearing is held....

(B) A majority of the hearing panel may order a penalty or sanction against the respondent licensee, which order shall be deemed final unless a majority of a quorum of the Commission decides to review the decision of the panel within 20 working days of its entry.

In the event the Commission decides to review a decision of the hearing panel, the decision of a majority of the members present ... shall constitute the final decision of the Commission.

**4.** We do not preclude the three members of the Commission who reviewed the record from determining this case, provided petitioner is given notice and an opportunity to present argument.

ministrative order and remand of case for further proceedings).

As to the two new matters petitioner complains the Commission considered in rendering its 1983 Decision without affording him the opportunity to be heard, our remand to the Commission will ensure that he will be heard on these matters.[5]

*Remanded for further proceedings consistent with this opinion.*[6]

**5.** Specifically, petitioner points to the Board's conclusion in its Decision that his plea in a criminal proceeding to several counts of perjury "raises the most serious questions about his moral character" and the Board's statement that Dr. Sherman "has argued that intervening acts by employees of D.C. General Hospital led to the death [of his patient], not his treatment of her."

Petitioner argues that had he had notice and opportunity to be heard, he could have pointed to comments by the sentencing judge in his criminal case concerning certain redeeming characteristics possessed by petitioner, as well as actions taken by petitioner after his conviction, all of which reflected "good" moral character. Also, petitioner asserts that he could have pointed out to the Commission that he *never*

defended his case before the Commission on the ground that his patient's death was the result of "intervening cause."

**6.** As to petitioner's contention that it was improper for the Commission to receive advice from one member of the Corporation Counsel's office while other members of the same office prosecuted the case against petitioner, the courts in this jurisdiction have rejected such contention. *Jonal Corp. v. District of Columbia,* 175 U.S.App.D.C. 57, 65–66, 533 F.2d 1192, 1200–01 (1976); *see Mendota Apartments v. D.C. Commission on Human Rights,* 315 A.2d 832 (D.C.1974); *Citizens Association of Georgetown, Inc. v. District of Columbia ABC Board,* 359 A.2d 295 (D.C.1976).