**STEVENS CHEVROLET, INC., Petitioner,**

v.

**COMMISSION ON HUMAN RIGHTS, Respondent.**

**No. 84–401.**

District of Columbia Court of Appeals.

Argued Aug. 7, 1985.

Decided Sept. 16, 1985.

Henry H. Brylawski, Washington, D.C., for petitioner.

Edward E. Schwab, Asst. Corp. Counsel, Washington, D.C., with whom Inez Smith

Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for respondent.

Before NEWMAN and TERRY, Associate Judges, and REILLY, Chief Judge, Retired.

TERRY, Associate Judge:

This case presents a sorry picture of bureaucratic bungling and administrative intransigence. It has been pending for nine and a half years. Because of the stubborn refusal of the Commission on Human Rights to correct an obvious procedural error, at least six of those years have been wasted, and the case is no closer to a final disposition now than it was in 1979. We reverse the order that is before us for review and remand the case for a *de novo* evidentiary hearing before a new hearing examiner. In light of the delay thus far, we direct that the new hearing be held promptly and that all proceedings thereafter be expedited.

I

The complainant, Angel Sampedro, was born in Cuba in 1921. He moved to the United States in 1948 and became a citizen in 1956. Mr. Sampedro went to work as a car painter for Heath Chevrolet in 1949. He worked there until 1963, when he was hired by Eaton Chevrolet to do the same work. When Eaton Chevrolet was purchased by petitioner, Stevens Chevrolet, Inc., in 1972, Stevens hired Sampedro and several other Eaton employees.

Mr. Sampedro worked for Stevens from 1972 until he was discharged on December 1, 1975. When he appeared for work that day, his supervisor, Ralph Simons, told him, "Don't change your clothes, because I don't need you any more. I am going to make some changes in the paint shop." Although initially the reorganization of the

shop was given as the reason for his discharge, Mr. Simons later signed a written notice of termination which stated that Sampedro was being fired because his work was unsatisfactory. Sampedro was immediately replaced in the paint shop by a new employee, Richard Stallard, a white, non-Hispanic man.

On February 2, 1976, Sampedro filed a complaint with the District of Columbia Commission on Human Rights, alleging that he had been discharged because of his national origin, in violation of D.C.Code § 1–2512 (1981).[1] After efforts to solve the problem by conciliation failed, *see* D.C. Code § 1–2546 (1981), a hearing was held in June 1978 before a hearing examiner. In February 1979, eight months after the hearing was completed, the hearing examiner retired. He never reported his findings in this case to the Commission, although he was required to do so by D.C. Code § 1–2551(a) (1981).

The Commission, believing that the hearing examiner had in fact submitted a report, issued a proposed decision on December 11, 1979, finding that Stevens had unlawfully discriminated against Sampedro because of his national origin. After that decision was made final on July 7, 1980, Stevens filed in this court a petition for review (No. 80–801).

A few months later the Corporation Counsel filed a motion to remand the case to the Commission for a new hearing because it had discovered that the hearing examiner had retired without ever submitting a report to the Commission. That motion was granted on December 9, 1980. On remand, however, the Commission somehow concluded that it had found the examiner's report, and on April 15, 1981, it issued an "addendum" reaffirming its earlier decision.

Stevens then filed a second petition for review (No. 81–508) and, in due course, a motion to remand the case to the Commis-

---

1. Section 1–2512(a) prohibits discrimination in employment based on any of thirteen grounds, one of which is "national origin."

sion for a new hearing. The Corporation Counsel filed a response agreeing "that this matter should be remanded to [the Commission] so that it may vacate its prior decisions and order a new hearing to be held." The motion to remand was granted on September 30, 1981.

No further action was taken by the Commission for almost twenty months. An inquiry from Mr. Sampedro to the Mayor's Office of Latino Affairs, which in turn prompted an inquiry from that office to the Commission, appears to have led to the issuance, on May 17, 1983, of a "proposed decision and order." That order concluded, once again, that Stevens had discriminated against Sampedro and directed Stevens to pay Sampedro a total of $20,588.68 in back wages, punitive damages, attorney's fees, and costs. In spite of the two earlier remands, the Commission refused to hold another hearing. The proposed decision stated in part:

The Commission further determined that another hearing in this matter would be unnecessary, since the record contained significant undisputed facts and reliable documentary evidence which rendered an initial determination of the credibility of various witnesses non-essential for a determination of whether or not Complainant carried his initial burden of production or his ultimate burden of persuasion. Accordingly, because of the presence of significant undisputed facts as well as documentary evidence, the Commission concluded that the credibility of various witnesses could be appropriately determined through an assessment of the consistency or inconsistency of their testimony in relation to all the evidence in the record. The Commission also considered the nature of the dispositive factual issue in this case and concluded that having the hearing examiner's assessment of witness credibility was not essential to render a fair decision on the merits in the case.

Stevens objected and filed a motion to reconsider, asserting that the Commission was attempting for the third time to issue a decision without the benefit of a hearing examiner's report, could not legally do so, and should withdraw the proposed decision. In an order issued on September 1, the Commission agreed to hold a hearing, but only for the limited purpose of observing the demeanor of Stevens' two principal witnesses. Sampedro was given the opportunity to cross-examine Stevens' witnesses and to present rebuttal evidence. The order expressly stated:

This will not be a hearing de novo, and no other testimony or documentary evidence will be admitted.

The new hearing was scheduled for October 5, 1983, but Stevens declined to participate in it unless the Commission agreed that it would be a hearing *de novo*. The Commission refused, and the hearing ended without the taking of any testimony at all. The Commission then construed Stevens' action to be a waiver of any and all procedural defects in the case.

On November 29, 1983, the Commission issued a new final decision, again reaffirming its initial order. Stevens filed a motion to reconsider, which was granted in part with regard to damages, and then filed exceptions to the Commission's revised order. When its last motion was denied, petitioner filed the instant petition for review.

## II

Stevens contends that it is entitled to a new hearing because the hearing examiner retired without reporting his findings back to the Commission. We agree.

Under D.C.Code § 1–2551(a) (1981), the Commission may elect to have a hearing examiner preside at a hearing instead of three of its own members. If it does so, however, it may proceed with the matter only after the examiner has reported back to the Commission. D.C.Code § 1–2551(a) provides:

After a complaint has been noticed for a hearing, a hearing tribunal consisting of three members of the Commission,

sitting as the Commission, shall be appointed to make a determination upon such complaint. At the discretion of the Commission, one or more hearing examiners may be delegated to hear *and report back to the Commission,* on any case or question before the Commission. [Emphasis added.]

Although this provision obviously applies to the present case, it fails to make clear what the Commission must do when an examiner fails to report back.

The issue presented in this case has arisen in several cases under the corresponding provisions of the federal Administrative Procedure Act (APA). Under the APA, a hearing examiner who has retired before making a recommended decision is deemed to have become "unavailable," as that term is used in 5 U.S.C. § 554(d) (1982).[2] *Gamble-Skogmo, Inc. v. FTC,* 211 F.2d 106, 112 (8th Cir.1954). When the examiner has become unavailable, courts have uniformly required a hearing *de novo* whenever the agency's decision depends to any extent on the credibility of witnesses. *Id.* at 115; *see, e.g., Millar v. FCC,* 228 U.S.App.D.C. 125, 133–135, 707 F.2d 1530, 1538–1540 (1983); *Van Teslaar v. Bender,* 365 F.Supp. 1007, 1012 (D.Md.1973); *cf. Simmons v. District Unemployment Compensation Board,* 292 A.2d 797, 800 (D.C.1972) (administrative decision reversed for lack of substantial evidence because of hearing examiner's failure to file report, where demeanor of witnesses was "necessarily ... a substantial factor in evaluating their credibility"). *See generally* 3 K. DAVIS, ADMINISTRATIVE LAW TREATISE § 17.17 (2d ed. 1980); Note, *Replacing Finders of Fact—Judge, Juror, Administrative Hearing Officer,* 68 COLUM.L.REV. 1317, 1333–1334 (1968).[3]

The leading case on this issue is *Gamble-Skogmo, Inc. v. FTC, supra.* In that case the court reversed a decision of the Federal Trade Commission which was based on the initial decision of a hearing examiner who had not actually heard the testimony presented at the hearing. The examiner who had presided at the hearing retired without reporting his findings to the agency. The FTC then had another examiner review the record and make an initial decision. The Eighth Circuit held that the FTC's short cut did not satisfy the requirements of the APA.

The court explained that the object of the "report back" provision was to have the credibility evaluation of the witnesses done by the one who saw the witnesses at first hand. 211 F.2d at 113. This not only provided a procedural safeguard against arbitrary agency action, but also enhanced the likelihood of a sound and fair decision. *Id.* at 113, 115. The statute was also designed, said the court, to reduce the public perception that agency action was often arbitrary. *Id.* at 114.

---

**2.** The APA provides that when an agency makes a decision "without having presided at the reception of the evidence, the presiding employee ... shall first recommend a decision...." 5 U.S.C. § 557(b) (1982). Another section states that the presiding employee (*i.e.* the hearing examiner) "shall make the recommended decision ... unless he becomes unavailable to the agency." 5 U.S.C. § 554(d) (1982).

**3.** The Commission cites *United States v. Raddatz,* 447 U.S. 667, 680–681, 100 S.Ct. 2406, 2414–2415, 65 L.Ed.2d 424 (1980), *Sherman v. District of Columbia Commission on Licensure,* 476 A.2d 667, 669 (D.C.1984), and *Polcover v. Secretary of the Treasury,* 155 U.S.App.D.C. 338, 346–347, 477 F.2d 1223, 1231–1232 (1973), *cert. denied,* 414 U.S. 1001 (1974), as authority to the contrary. None of those cases even addresses

the issue presented in the instant case, and none of them involves a statute with a "report back" requirement; therefore, reliance on them is misplaced. The holding in *Raddatz* is based on a statute, 28 U.S.C. § 636(b)(1)(B) (1982), which expressly provides for a *de novo* determination by a judge of issues decided by a magistrate. *Sherman* likewise involves a specific statute, D.C.Code § 1–1509(d) (1981), which does not apply to this case. As for *Polcover,* it simply reiterates the well-established standard for review of an administrative decision: whether it is supported by substantial evidence. We find nothing in *Polcover* that is inconsistent with our decision here, and in any event *Polcover* is not binding on us. *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971).

Against this background, the court concluded that Congress never intended to promote arbitrariness by denying the benefit of the "report back" requirement to those persons who are fortuitously involved in a case in which the examiner becomes unavailable. Congress simply could not have meant to permit a "procedural double-standard of credibility evaluation" when the credibility of witnesses was capable of affecting the outcome of the case. "Administrative convenience and dispatch are of but little value," the court declared, "unless they also are reasonably capable of producing fairness of result." *Id.*

Thus the court held that if credibility issues are involved, the agency must hold a new hearing whenever a hearing examiner becomes unavailable before making a recommended decision:

> If, in arriving at some material fact or facts, either as a matter of direct determination or predicated inference, it is necessary to choose, or a choice is undertaken to be made, on a personal basis, between things, which some witnesses assert and other witnesses deny, neither of which is inherently incredible, and such a choice is acceptingly or rejectingly capable of affecting the result, proper credibility evaluation is inescapably involved as a salient processive factor.

*Id.* at 115. The court then went on to reverse and remand for a new hearing because it was clear from the record that the substitute examiner had made credibility findings in reaching his decision. *Id.* at 115–118.

Given the similarity between the requirements of D.C.Code § 1–2551(a) and 5 U.S.C. § 554(d), we hold that section 1–2551(a) requires the Commission to hold a new hearing whenever a hearing examiner becomes unavailable without first reporting his or her initial decision back to the agency, unless the agency can demonstrate that the credibility of witnesses plays no part in the agency's decision. The burden of persuading a reviewing court that credibility is not a factor shall remain with the agency at all times. We note, incidentally, that the District of Columbia statute speaks in absolute terms and does not make any exceptions, as the APA does. *Compare* D.C.Code § 1–2551(a) (the hearing examiner must "report back to the Commission, on any case or question before the Commission") *with* 5 U.S.C. § 554(d) ("The employee who presides at the reception of evidence … shall make the recommended decision … unless he becomes unavailable to the agency"). We need not now decide whether there are any exceptions under the District of Columbia statute, because we are convinced that there can be no exception when credibility issues are involved.[4]

### III

In the present case, it is clear that before the Commission can make any decision at all, some credibility issues must be resolved. The central dispute between the parties concerned the reason for Sampedro's discharge,[5] and the testimony before the hearing examiner was in sharp conflict.

---

**4.** The Commission argues that we should accept its "construction" of section 1–2551(a) and affirm the order under review. *See, e.g., Investment Co. Institute v. Camp,* 401 U.S. 617, 626–627, 91 S.Ct. 1091, 1097, 28 L.Ed.2d 367 (1971) ("courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with the enforcement of that statute"); *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969). We reject the argument because its premise is faulty. This case does not present an issue of statutory construction; rather, we must determine what the agency must do when the explicit requirements of the statute are not met.

**5.** The critical issue before the Commission was whether Stevens had a legitimate non-discriminatory reason for discharging Sampedro. *RAP, Inc. v. District of Columbia Commission on Human Rights,* 485 A.2d 173, 176 (D.C.1984); *Greater Washington Business Center v. District of Columbia Commission on Human Rights,* 454 A.2d 1333, 1338–1339 (D.C.1982).

Ralph Simons, Sampedro's supervisor, was the one who fired Sampedro. He testified that he did so primarily because Sampedro worked too slowly and had a number of "comebacks." The term "comeback," Simons said, refers to a situation in which a customer is dissatisfied with the paint job on a car and comes back to have it done properly—at the company's expense. Simons expressly denied having fired Sampedro because of his national origin.

Sampedro testified, on the other hand, that he worked on a commission basis and therefore was paid more for each additional car he painted. He said that he worked very quickly and that he often complained to Simons about not having enough work. In fact, on one occasion he pointed out to Simons that several cars were waiting to be painted and asked if he could work on them. Simons refused to allow him to do so and said he was going to assign those cars to another painter. Sampedro also testified that, unlike any other painter in the shop, he was required to conduct an inventory from time to time, and that the inventory took time away from his painting. With regard to the comebacks, Sampedro testified that he never had any. He added, however, that other painters did have comebacks and that he was often required to repaint those cars. Sampedro could think of no legitimate reason for his discharge, and therefore concluded that it was due to his national origin.

There was a great deal of other evidence presented before the hearing examiner. The Commission in its brief discusses at length all of the evidence and how it must be interpreted. None of it, however, rendered Stevens' witnesses inherently incredi-

**6.** *See In re A.H.B.,* 491 A.2d 490, 496 n. 8 (D.C. 1985).

**7.** There is no merit in Stevens' contention that the case before the Commission should be dismissed because of administrative delay. *NLRB v. J.H. Rutter-Rex Mfg. Co.,* 396 U.S. 258, 263–266, 90 S.Ct. 417, 420–422, 24 L.Ed.2d 405 (1969); *JBG Properties, Inc. v. District of Columbia Office of Human Rights,* 364 A.2d 1183, 1185–1186 (D.C.1976); *see Fesjian v. Jefferson,*

ble,[6] and thus a new hearing is required. *Gamble-Skogmo, Inc. v. FTC, supra,* 211 F.2d at 115; *accord, Millar v. FCC, supra,* 228 U.S.App.D.C. at 134, 707 F.2d at 1539 (citing cases).

## IV

We therefore reverse the decision of the Commission and remand this case for a *de novo* evidentiary hearing. Because of the long delay that has already occurred, which has prejudiced both Mr. Sampedro and Stevens Chevrolet, we direct that the new hearing shall be held within sixty days from the date of this opinion. The hearing examiner shall report his or her findings and recommendations to the Commission within thirty days after the completion of the testimony, and the Commission shall issue its final decision within forty-five days after receiving the hearing examiner's report.[7]

*Reversed and remanded.*

399 A.2d 861, 866 (D.C.1979). Mr. Sampedro's right to a proper hearing is at least as great as that of Stevens, and we will not infringe it by dismissing the case when the delay has not been the fault of either party. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433–435, 102 S.Ct. 1148, 1156–1158, 71 L.Ed.2d 265 (1982).

In view of our decision to remand this case, we need not consider any of Stevens' other claims of error.