**DISTRICT OF COLUMBIA, Appellant
and Cross–Appellee,**

v.

**James R. FREMEAU, Appellee
and Cross–Appellant.**

Nos. 03–CV–591, 03–CV–639.

District of Columbia Court of Appeals.

Argued Feb. 1, 2005.

Decided March 10, 2005.

James C. McKay, Jr., Senior Assistant Attorney General for the District of Columbia, with whom Edward E. Schwab, Acting Deputy Attorney General at the time the brief was filed, and Robert J. Spagnoletti, Attorney General, were on the brief, for appellant/cross-appellee.

Frederic W. Schwartz, Jr., for appellee/cross-appellant.

Before TERRY, REID and GLICKMAN, Associate Judges.

REID, Associate Judge:

This case involves an action by the District of Columbia Fire Department ("Fire Department") terminating the services of appellee James R. Fremeau as Fire Communications Operator. The Office of Employee Appeals ("OEA") sustained the agency's decision, but the Superior Court of the District of Columbia reversed that decision and remanded the case to the agency for a new evidentiary hearing. The District of Columbia and Mr. Fremeau filed cross-appeals. The District contends that the trial court erred in reversing OEA's decision, and Mr. Fremeau primarily argues that the agency did not sustain the charges against him. We reverse the decision of the Superior Court in so far as it requires a remand to the agency for a credibility determination, and instead remand this matter to the Superior Court with instructions to affirm OEA's decision to remove Mr. Fremeau from his position as a Fire Communications Operator.

## FACTUAL SUMMARY

On June 12, 1990, the Deputy Fire Chief, Communications Division, sent a letter to Mr. Fremeau proposing to remove him from his position as a Fire Communications Operator. The specified charge was: "Inefficiency; to wit: Negligent or careless work performance." The proposed removal letter summarized the agency's rationale as follows:

Specifically, on April 12, 1990, you received a request for an ambulance from a concerned citizen who had observed a man in distress. The caller never reported any symptoms of intoxication, however, you assumed that the man was inebriated. In fact, based on that as-

sumption, your first request was for the MPD detox unit rather than medical units. You sarcastically and unprofessionally requested from MPD, "The same thing we picked up at 1024 9th Street, N.W. . . . detox. She's waiting there with his bags." In addition, you did not expeditiously que[ue] this call for proper attention.

Your presumptuous and careless attitude resulted in an incorrect assessment of the situation. In reality, this sixty-eight year old man was suffering from, and indeed, did die from cardiac arrest. Your lackadaisical manner influenced the entire operation; delaying expedient patient care. Lastly, your assumption in this incident reflects an unprofessional disregard and a total lack of compassion for the citizens of this metropolitan vicinity.

A hearing on Mr. Fremeau's proposed removal took place before a hearing examiner, George Williams, on March 27, 1991, during which the agency presented testimony from the Assistant Fire Chief, Maurice D. Kilby, the Director of the Communications Division, Philip Matthews, and another communications operator, Jeffrey T. Williams. The agency also introduced exhibits which were admitted into evidence, including government exhibit 4—a tape containing three conversations regarding the incident in question. Mr. Fremeau testified and, in addition, presented testimony from Ronald Hutchinson, a call-taker at the Fire Department.

The first conversation on government exhibit 4 was that between the person calling to report the illness of the elderly man and Mr. Fremeau. The caller stated that she had been asked by a woman standing with a man to call for an ambulance because he was ill, but that she did not know any symptoms. Mr. Fremeau ascertained that the man was outside standing on the corner with a woman, and that the man was awake and breathing. There was no mention of drinking or inebriation or detox. The next conversation on the tape was that between Mr. Fremeau and a police dispatcher. Following is the conversation:

| Police Dispatcher: | Police. |
| Mr. Fremeau: | Yes ma'am. |
| Police Dispatcher: | You need us? |
| Mr. Fremeau: | Yes we do. |
| Police Dispatcher: | Where? |
| Mr. Fremeau: | 31st and Fort Lincoln Drive, N.E. The same thing we picked up at 1024 9th Street, N.W. Detox. |
| Police Dispatcher: | I'm sorry. That's a detox? |
| Mr. Fremeau: | You got it, sweetheart. She's waiting there with his bags. (Unknown sound from Mr. Fremeau) |
| Police Dispatcher: | (Chuckle) We're on the way. |

The third conversation on government exhibit 4 was from the ambulance dispatcher, identified as Mr. Williams, to a paramedic unit. The dispatcher reported a sick person at 31st and Fort Lincoln Drive, and added: "Might be a detox candidate. We're going to go ahead and notify the police with you. Go ahead and respond for now." The ambulance dispatcher later asked whether the unit was on the scene and whether the police were there. The paramedic responded that he did not see the police. When asked whether he thought that he would be transporting the person, or whether it was a police matter, the paramedic eventually responded that he had a "68 year old male" who had "trouble breathing" and was "complaining of upper and lower congestion—bilateral congestion." The man had a "history of cardiac." His blood pressure was "168 over 92." The paramedic estimated that time of arrival at the hospital was "five minutes."

Mr. Kilby's testimony discussed the Fire Department's protocol, its priority response codes, and Mr. Fremeau's words and actions regarding the call from Fort Lincoln Drive. Based upon the information received by Mr. Fremeau, the desig-

nation of a Code 3 priority was "appropriate." By referencing detox, Mr. Fremeau may "have possibly slowed down the response of the unit to assist the patient being transported." [1] Mr. Kilby was clear, however, that delay was not the issue. As he testified on cross-examination: "The delay was not the problem. Mr. Fremeau's actions mainly in his words and what he said and how he reacted was how the Fire Department reacted." Furthermore, the police department was automatically notified, but Mr. Fremeau "notif[ied] the police again, which was not part of the protocol." Mr. Kilby's June 18, 1990 memorandum to the Fire Chief, regarding Mr. Kilby's findings and recommendations as the Disinterested Designee in Mr. Fremeau's case, was marked as an exhibit and discussed at the March 27, 1991 hearing. In that memorandum Mr. Kilby referenced the charge of inefficiency lodged against Mr. Fremeau and stated:

Mr. Fremeau readily admitted that he had failed to adhere to protocol. This was due to his assumption that the patient was intoxicated and would be transported to detox. His inappropriate and unauthorized actions, i.e., calling MPD instead of immediately placing the call in que[ue] for ambulance response, had a detrimental effect on the entire incident.

Mr. Fremeau has worked in the Communications Division for approximately three (3) years and is aware of the critical role, often in life and death situations, protocol maintains. His disregard of the procedure can not be taken lightly and should not be excused. I, therefore, concur with Chief Philip A. Matthew's

recommendation that Mr. Fremeau should be removed from his position with the D.C. Fire Department.

Mr. Fremeau's counsel stated, "I have no objection to this exhibit" when it was marked at the hearing. After the exhibit was moved into evidence, and the hearing examiner inquired as to whether Mr. Fremeau had any objection, counsel responded, "No."

During his testimony, Mr. Williams, the ambulance dispatcher (not the police dispatcher), was asked about a call from Mr. Fremeau. He testified that Mr. Fremeau "[b]asically ... told me that it was a detox person and that he had notified the police." Mr. Williams told Mr. Fremeau, "I still have to send the ambulance," and "[he] went ahead and dispatched the ambulance." He interpreted Mr. Fremeau's comment "as implying [ ] that it was not that serious of a case and there was no hurry."

Mr. Matthews, the Director of the Communications Division, was asked why Mr. Fremeau was "separated" from his position. He explained that Mr. Fremeau was terminated "[b]ecause of his actions, because of what he implied, and because of the ensuing fact that the individual did need medical assistance and was hospitalized and was not a candidate for detoxification as reported."

Mr. Fremeau acknowledged, on cross-examination, that when he spoke with the police dispatcher, he identified the elderly man as "a detox candidate," and that he used a sarcastic tone when he included a reference to "1024 9th Street." [2] Howev-

---

1. After the paramedics arrived on the scene, there was a several minute delay in transporting the elderly man to the hospital.

2. Mr. Fremeau had received an earlier call from the police indicating that there was a detox case at 1024 Ninth Street, N.W. Upon

checking, he had determined that the man involved sounded inebriated but he also had been assaulted. Mr. Fremeau testified that he had used a sarcastic tone in his call to the police dispatcher about the elderly man at Fort Lincoln Drive because he "believe[d]

er, he denied having told Mr. Williams that the elderly gentleman was a detox candidate. Mr. Fremeau called the police dispatcher approximately 5 seconds after he ended his call with the caller from Fort Lincoln Drive. He said he expected a police car to go to the site after he had placed the call. He was asked, "[i]f there was a medical problem could ... the police deal with that problem?" He replied:

> If they were trained, yes. Or, if they had arrived on the scene first they could have radioed back, they could have had more equipment, then I would have said something to [the ambulance dispatcher, Mr. Williams] saying, "Hey, we're getting a second call on [t]his. Upgrade it."

The thrust of Mr. Hutchinson's testimony was that Mr. Fremeau properly handled the call about the elderly man.

After the March 27, 1991, hearing before Administrative Judge Williams, and before a written initial decision was issued, the case was re-assigned to another hearing examiner, and finally to Administrative Judge Deborah E. Reeves, who rendered an initial decision on April 29, 1998 ("Initial Decision"). In that decision the Administrative Judge made three findings of fact:

1. [Mr. Fremeau] entered the call into the computer ... before he called the police.

2. It is undisputed that there was no indication that the gentleman was a detox candidate, or that the gentleman had a medical problem.

3. It is undisputed that [Mr. Fremeau] called the police dispatcher and sarcastically stated that the gentleman was a detox candidate.

In her analysis, the Administrative Judge indicated that Mr. Fremeau had been charged with "[i]nefficiency," that the term " 'inefficiency' means 'lack of efficiency,' while 'efficiency' is defined *inter alia* as "competency in performance ... accomplishment of a job with a 'minimum expenditure of time or effort.' " Initial Decision at 7 (citing RANDOM HOUSE COLLEGE DICTIONARY 680, 421 (Rev. Ed.1980)). She noted that the June 12, 1990, notice letter alleged that Mr. Fremeau demonstrated " 'a presumptuous and careless attitude,' [and a] 'lackadaisical manner ....' " Moreover, the Fire Department's notice letter "stated that [Mr. Fremeau's] attitude reflected an 'unprofessional disregard and a total lack of compassion for the citizens of this metropolitan vicinity.' " She concluded that the Fire Department had met its burden of proving inefficiency by a preponderance of the evidence.

Specifically, although the administrative judge determined that Mr. Fremeau properly classified the call and "requested a medical unit before requesting a detox unit," she concluded that Mr. Fremeau's own testimony was "sufficient to warrant a decision that the [Fire Department's] action removing hi[m] from service was warranted." This was true because Mr. Fremeau "acknowledged that his tone was sarcastic, [and][a] sarcastic tone is never appropriate when dealing with emergency situations." Moreover, the administrative judge said that Mr. Fremeau's rationalization of his sarcastic tone by reference to the earlier incident "is not credible under any circumstances and will not be afforded any significant evidentiary weight."[3] The

---

that the dispatcher that [he] spoke to about 31st Place and Fort Lincoln Drive was one of the dispatchers that told [him] it was a detox at 1024 Ninth Street, Northwest." He wanted to show that "the police were wrong about

1024 Ninth Street, Northwest, and that, in fact, it [was] an emergency...."

3. In making this determination, the administrative judge added the following as a footnote:

judge also concluded that "[Mr. Fremeau's] comment, '[t]he same thing we picked up at 1024 9th Street ... detox. She's waiting there with his bags,' with or without sarcasm, was misleading." *Id.* It was misleading because "[t]here was no indication that the gentleman was a detox candidate, or that there was a medical problem. Rather than reporting that the exact nature of the situation was not known, [Mr. Fremeau] took it upon himself to classify the emergency situation as a detox problem." *Id.* Furthermore, the administrative judge found "particularly damaging" Mr. Fremeau's testimony that "he expected a police car to go to the site at Fort Lincoln Dive," and that "had the officers been trained, they could have dealt with a medical problem[,][or] at a minimum the officers could have radioed for assistance." This testimony was deemed to "support[ ] [the Fire Department's] contention that the type of comment [Mr. Fremeau] made to the police dispatcher was inappropriate." And, the judge asserted that "the overwhelming weight of the testimony indicates that when inappropriate comments are made, 'everybody is a little slower with the detox ... including the police and including our ambulance personnel.' " *Id.* Consequently, after reviewing the testimony introduced at the hearing and the Fire Department's charge of inefficiency, the administrative judge upheld the agency's removal of Mr. Fremeau.

Mr. Fremeau appealed the administrative judge's decision to the OEA Board, contending "that the Administrative Judge lacked substantial evidence to uphold [the

The undersigned was not the presiding official at the hearing in this matter. Initially, it appeared that a rehearing would be required in order to resolve differences in testimony and make credibility determinations. However, given [Mr. Fremeau's] testimony on his own behalf, it is not neces-

Fire Department's] actions." On September 28, 2001, a majority of the three-person OEA Board rejected his contention and denied his petition for review. The OEA majority summarized Mr. Fremeau's argument:

Specifically, [Mr. Fremeau] argues that there was not substantial evidence in the record for the Administrative Judge to conclude that [his] "presumptuous and careless attitude resulted in an incorrect assessment of the situation"; that [his] "assumption [that the patient was a detox candidate] reflect[ed] an unprofessional disregard and a total lack of compassion for the citizens of this metropolitan area"; and that removal was an appropriate penalty.

The OEA majority determined that the Administrative Judge had "thoroughly review[ed] the record in this appeal" and that the "record ... contains substantial evidence to support the Administrative Judge's findings and conclusions." The dissenting Board member primarily faulted the administrative judge for not conducting a new evidentiary hearing because of the substitution of judges.

Mr. Fremeau filed a petition for review of the OEA's decision in the Superior Court. The record shows his primary argument in the petition was: "The findings and determination of the OEA ... [were] arbitrary, capricious, not supported by substantial evidence, untimely, and clearly erroneous as a matter of law." [4] The Superior Court first determined that Mr. Fremeau had waived any objection that a new evidentiary hearing was required, but

sary to consider conflicting testimony, or conduct another hearing solely for the purpose of making credibility determinations. Initial Decision at 8 n. 2.

4. Mr. Fremeau did not press his contention that the OEA decision was untimely.

that because "the OEA did not use waiver as a basis for deciding that a hearing need not have been held, the court cannot use that rationale as a basis either." The reviewing Superior Court judge noted that the OEA administrative judge reached her conclusions mainly on the testimony of Mr. Fremeau. The judge focused on the "stated rationale" of the OEA Board, "... that a hearing need not be held where the evidence is undisputed and is in the record":

> While Mr. Fremeau's testimony might seem implausible, the Court cannot say that it is inherently incredible. The Court thus concludes that it cannot affirm the OEA's decision because the OEA, in holding that there was substantial evidence supporting the agency's determination, assumed as a fact the disputed evidence that Mr. Fremeau told the ambulance dispatcher that the person in need of aid was a detox case. The charge was "inefficiency," and the agency's decision that this charge had been proved depended at least to some extent on the credibility of the witnesses.

The Superior Court judge thus appeared to conclude that the OEA's decision rested, at least implicitly, on Mr. Williams' testimony that Mr. Fremeau spoke with him and identified the elderly gentleman as a detox candidate. Consequently, since the judge perceived a conflict between Mr. Fremeau's denial of that conversation and Mr. Williams' assertion that it in fact occurred, the Superior Court judge reversed the OEA Board, and remanded the matter for a new evidentiary hearing within sixty days of the date of his order. Both parties' motions for reconsideration were denied. In his motion for reconsideration, Mr. Fremeau argued in essence that some of the facts in the June 12, 1990 notice letter were not proven during his hearing, and that "new and impermissible allega-

tion[s] [were] ... articulated." The judge found that the charge against Mr. Fremeau—" 'inefficiency: to wit, negligent or careless work performance'—did not change." In addition, Mr. Fremeau "was on notice prior to the hearing that the agency position was that the nexus between the call to the [police] and the detrimental effect was [Mr. Fremeau's] statement to the dispatcher that the patient might be a detox candidate." With respect to OEA's petition for reconsideration, the judge cited *Stevens Chevrolet, Inc. v. Commission on Human Rights,* 498 A.2d 546 (D.C.1985), requiring a new evidentiary hearing following the appointment of a substitute hearing examiner, "unless the agency can demonstrate that the credibility of the witnesses plays no part in the agency's decision." *Id.* at 550. Both parties filed timely appeals.

## ANALYSIS

We are confronted with two main questions in this matter. First, was a new evidentiary hearing required when a substitute hearing examiner was designated in this case? Second, if no new evidentiary hearing was required, was there substantial evidence in the record to support the agency's decision to remove Mr. Fremeau from his position as a Communications Operator in the Fire Department? The District argues that "the Superior Court erred in reversing the OEA's decision and *sua sponte* remanding the case for a *de novo* hearing." It argues that the issue of whether a new hearing was required "was not raised before the OEA," and that Mr. Fremeau "waived his right to another hearing." Furthermore, the District maintains that Mr. Williams' testimony was "irrelevant" with respect to the OEA's decision, and that there was substantial evidence in the record to support the agency's decision to remove Mr. Fre-

meau. Mr. Fremeau appears to argue mainly that the District did not present sufficient evidence to sustain the June 12, 1990 charge against him; that all of the allegations in the June 12, 1990 notice letter were not proven; that new allegations were raised impermissibly; and that if the case is remanded to the OEA, the matter should be resolved on the record, with all credibility determinations made in Mr. Fremeau's favor.

■ "In considering the trial court's review of an OEA decision, 'we conduct the identical review that we would undertake if this appeal had been heard initially in this court.'" *District of Columbia v. Davis,* 685 A.2d 389, 393 (D.C.1996) (quoting *Kegley v. District of Columbia,* 440 A.2d 1013, 1019 (D.C.1982)). "[W]e must examine the administrative record to determine whether there has been procedural error, whether there is substantial evidence in the record to support the OEA's findings, or whether the OEA's action was in some manner otherwise arbitrary, capricious, or an abuse of discretion." *District of Columbia Metro. Police Dep't v. Broadus,* 560 A.2d 501, 504 (D.C.1989) (quoting *Stokes v. District of Columbia,* 502 A.2d 1006, 1010 (D.C.1985)) (internal quotation marks omitted). "An agency's findings of fact and conclusions of law must be affirmed if they are supported by substantial evidence." *Davis, supra,* 685 A.2d at 393.

■ However, "[s]imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *District of Columbia Gen. Hosp. v. District of Columbia Office of Employee Appeals,* 548 A.2d 70, 74 (D.C.1988) (quoting *United States v. L.A. Tucker Truck Lines,*

344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54 (1952)) (internal quotation marks omitted). Hence, a party "waive[s] challenge to the substitution of hearing examiners by not objecting before issuance of the substitute examiner's decision." *Id.* at 75.

■ "When the [initial] examiner has become unavailable, courts have uniformly required a hearing *de novo* whenever the agency's decision depends to any extent on the credibility of witnesses." *Stevens Chevrolet, Inc.,* 498 A.2d at 549 (citation omitted). But, here, as the trial court correctly found, Mr. Fremeau waived his objection to the decision of the administrative judge—the substitute hearing examiner—to decide his case without a new evidentiary hearing. The trial court determined that as the agency sought a hearing examiner who could complete Mr. Fremeau's case, it twice advised Mr. Fremeau in writing that a new hearing might not be required. Yet, as the Superior Court judge asserted: "There is no record evidence that Mr. Fremeau requested a new hearing or objected to a decision without a[new] hearing," even though he did complain about the long delay in the completion of his case in light of the March 27, 1991 hearing. As we unequivocally stated in *D.C. General Hosp., supra,* a party "waive[s] [his or her right to] challenge [ ] the substitution of hearing examiners by not objecting before issuance of the substitute examiner's decision." 548 A.2d at 75.

■ Even assuming that Mr. Fremeau had preserved an objection to the substitute hearing examiner proceeding to decision without a new evidentiary hearing, our conclusion would not be different. In *Stevens Chevrolet, Inc., supra,* we stated: "[A] new hearing [is required] whenever a hearing examiner becomes unavailable without first reporting his or her initial

decision back to the agency, *unless the agency can demonstrate that the credibility of witnesses plays no part in the agency's decision.*" 498 A.2d at 550 (emphasis added). "The burden of persuading a reviewing court that credibility is not a factor shall remain with the agency at all times." *Id.*

In the instant case, the administrative judge considered a new hearing unnecessary because the evidence essential to its decision was undisputed. The OEA majority did not explicitly address the legal principle discussed in *Stevens Chevrolet, Inc., supra,* but the dissenting OEA Board member cited it in arguing that a new hearing was required. The Superior Court judge concluded that the OEA majority made "the factual assumption that Mr. Fremeau told the Fire Department dispatcher (who then relayed the information to the ambulance) that the person was [a] 'detox' candidate," and that the factual assumption "depended at least to some extent on the credibility of witnesses."

Our reading of the OEA majority decision differs from that of the Superior Court judge. The crux of the OEA's decision, like that of the administrative judge, centers on Mr. Fremeau's comment to the police dispatcher about "detox" and the sarcastic and misleading manner in which he made that comment. Since the evidence unequivocally showed that such comments generally tend to slow the rate of response in emergencies, it was not dispositive—and not the basis for the agency decision—whether Mr. Fremeau told the ambulance dispatcher specifically that the sick man was a "detox" candidate. As the OEA majority said, in part:

> After thoroughly reviewing the record made in this appeal including the testimony of all of the witnesses, the Administrative Judge found that [Mr. Fremeau] had properly queued the call and

had requested a medical unit before requesting a detox unit. Notwithstanding these findings, the Administrative Judge held that [Mr. Fremeau's] comment to the Metropolitan Police Department dispatcher—"the same thing we picked up at 1024 9th Street, N.W.... detox. She's waiting there with his bags."—was sarcastic and inappropriate and caused a delay in medical attention. Moreover, the Administrative Judge stated that instead of [Mr. Fremeau] "indicating that the exact nature of the situation was not known," [he] made the misleading comment and classified "the emergency situation as a detox problem" .... All of the Agency's witnesses testified that when an emergency is said to be for a "detox candidate," the entire emergency response is slowed .... [Although he was not presented with a detox situation], [Mr. Fremeau] took it upon himself to make that assumption. Further, [Mr. Fremeau] acknowledged that when he dispatched the call, his tone was sarcastic. As the Administrative Judge found, "[a] sarcastic tone is never appropriate when dealing with emergency situations." Moreover, one of [Mr. Fremeau's] own witnesses testified that when a call taker is joking while dispatching a call, such behavior conveys the message that the matter is not as serious as other matters.

We are satisfied that the decisions of Administrative Judge Reeves and the OEA majority rest squarely on the testimony of Mr. Fremeau, and that the testimony of the ambulance dispatcher that Mr. Fremeau told him the sick man was a detox candidate did not in any way control the outcome of Mr. Fremeau's case.

■ We turn now to the question whether there was substantial evidence in the record before us, without the making of a credibility determination to resolve

the conflict between Mr. Fremeau's testimony and that of Mr. Williams, to support the agency's decision to remove Mr. Fremeau from his position as Fire Communications Operator. From the outset, in its June 12, 1990 letter, the Fire Department charged Mr. Fremeau with "Inefficiency; to wit: Negligent or careless work performance." The evidence at the March 1991 hearing, including the tape of the incoming call from Fort Lincoln Drive, N.E., and Mr. Fremeau's call to the police dispatcher, as well as Mr. Fremeau's own testimony, showed that the caller never once mentioned, even remotely, the possibility of a detox candidate, or hinted at the possibility that the man in distress was inebriated. Nevertheless, Mr. Fremeau "assumed that the man, who was the subject of the incoming call, was inebriated and a detox candidate," and he "sarcastically and unprofessionally requested from [the police dispatcher] 'the same thing we picked up at 1024 9th Street, N.W.... detox.'" When the police dispatcher responded, "I'm sorry. That's a detox?", Mr. Fremeau answered: "You got it sweetheart. She's waiting there with his bags." The June 12, 1990 notice letter also specified that Mr. Fremeau's "presumptuous and careless attitude resulted in an incorrect assessment of the situation," that the sick man actually succumbed to "cardiac arrest"; that Mr. Fremeau's "lackadaisical manner influenced the entire operation"; and that "this incident reflects an unprofessional disregard and a total lack of compassion for the citizens of the metropolitan vicinity." The charge of "inefficiency" is carried forth in Mr. Kilby's June 18, 1990 memorandum to the Fire Chief, and in the Fire Chief's late June 1990 letter of decision. Moreover, as Administrative Judge Reeves detailed her decision, she clearly focused on the charge of "inefficiency," and the allegations of "a presumptuous and careless attitude," as

well as Mr. Fremeau's "lackadaisical manner" and his "unprofessional disregard and a total lack of compassion for the citizens of the metropolitan vicinity." The administrative judge's conclusion that the charges of inefficiency could be resolved, and indeed sustained, without credibility determinations, and by focusing on Mr. Fremeau's words and testimony is accurate.

When he testified at his hearing, Mr. Fremeau readily acknowledged that he identified the sick man as "a detox candidate"even though he had no information to that effect. Mr. Fremeau also admitted that he used a "sarcastic tone" in his communication. As the administrative judge asserted, a "sarcastic tone is never appropriate in dealing with emergency situations," and the reference to "detox" was misleading. During questioning at the hearing, Mr. Fremeau further stated that he expected a police car to go to the Fort Lincoln Drive, N.E. site. When asked whether the police could handle a medical problem, he responded: "If they were trained, yes." Or, once they reached the scene, "they could have radioed back, they could have had more equipment, then I would have said something to [the ambulance dispatcher] saying, 'Hey, we're getting a second call on [t]his. Upgrade it.'" The administrative judge recognized that this was "particularly damaging testimony" from Mr. Fremeau's own mouth. That testimony, as well as his words on the tape, reflected a "presumptuous and careless attitude," a "lackadaisical manner" and an "unprofessional disregard and a total lack of compassion for the citizens of the metropolitan vicinity," as charged in the June 12, 1990 notice letter. Moreover, if a second call were required due to misleading information relayed during a prior call, the response rate clearly would be slower and the Fire Department's efficien-

cy would suffer. Here, Mr. Kilby testified that the police are automatically notified concerning a 911 call, but that in this case Mr. Fremeau "notif[ied] the police again, which was not part of the protocol." We conclude, then, that there was substantial evidence in the record, based on Mr. Fremeau's words and testimony, and without a credibility determination relating to the ambulance dispatcher's account of what Mr. Fremeau told him, to support the OEA majority decision.

Finally, we are unpersuaded that the agency's decision "was in some manner otherwise arbitrary, capricious, or an abuse of discretion." *Broadus, supra,* 560 A.2d at 504. (citations and quotations omitted). Although Mr. Fremeau complains that the Fire Department did not prove every single statement set forth in its June 12, 1990 charge letter and introduced new allegations against him, he cites no case law that every single statement in a charging document must be proven by substantial evidence. Nor do we read the record as raising new, material allegations along the way to which Mr. Fremeau objected. Indeed, only the following two sentences in the June 12, 1990 notice letter were not substantiated during the hearing, and these were not material to the outcome of the case: "In fact based on that assumption [that the sick man was inebriated], your first request was for the MPD detox unit rather than medical units," and "[i]n addition, you did not expeditiously que[ue] this call for proper attention." As we have said, the crux of the charge against Mr. Fremeau was that he referred to a sick man as a "detox candidate" when there was no evidence that he was inebriated, not that he specifically told the ambulance dispatcher that the man at Fort Lincoln Drive, N.E. was a detox candidate, resulting in an actual slower medical response. Rather, his own testimony showed that his behavior was "inefficient," that is, represented "negligent or careless work performance" because of his "presumptuous and careless attitude" that the man was inebriated, his "lackadaisical manner," and his lack of professionalism with respect to the citizens of the District.

Accordingly, for the foregoing reasons, we reverse the decision of the Superior Court judge in so far as it requires a remand to the agency for a credibility determination, and instead remand this matter to the Superior Court with instructions to affirm the OEA's decision to remove Mr. Fremeau from his position as a Fire Communications Operator.

*So ordered.*